437 P.2d 983

Charlene HELLER, a divorced woman, and Richard J. McMullan and Patricia McMullan, husband and wife, Appellants,

v.

Louis LEVINE and Esther Levine, his wife, Appellees.

No. 1 CA–CIV 472.

Court of Appeals of Arizona.

Feb. 27, 1968.

Rehearing Denied March 19, 1968.

Review Denied April 11, 1968.

Alan Philip Bayham, Phoenix, for appellants.

Mariscal, Goss, Green & Corbet, Phoenix, by Sheldon Green and David T. Busch, Phoenix, for appellees.

CAMERON, Chief Judge.

This is an appeal by the defendant, Charlene Heller, in a mortgage foreclosure action. From a jury verdict and judgment in favor of the plaintiffs, and from the denial of the defendant's motions for new trial and judgment notwithstanding the verdict the defendant appeals.

Although the defendant sets forth eight "questions presented for review" we believe that there are primarily three ques-

tions that this Court is called upon to consider:

1. Were the note, mortgage, and escrow instructions "delivered" and properly admitted in evidence?

2. Is the evidence sufficient to show an equitable mortgage?

3. Was the court correct in giving an instruction on confidential relationship, and correct in refusing to give defendant's requested instruction on forgery to the jury?

Paul Heller was and is the ex-husband of the defendant Charlene Heller. As part of the divorce decree Charlene Heller retained possession of the family house which was, at the time in question, in need of repair. Paul Heller continued to manage the affairs relating to a water company which was owned by the Hellers and in the process of being sold. In September of 1962 Paul Heller went to the plaintiff, Louis Levine, who was in the business of lending money, and negotiated a loan of $7,500.00 to be secured by a second mortgage on the house. An escrow was opened at Phoenix Title and Trust Company to handle the matter. Paul Heller took escrow instructions, note, and mortgage to the home of Charlene Heller and had her sign the documents. Charlene Heller testified that Paul Heller rushed into her home with a large stack of papers which he told her involved the water company. Charlene Heller further testified that she relied on Mr. Heller's representation and signed the documents without ascertaining what they were. She admitted she signed the note, mortgage, escrow, and collection instructions. On the following day Mr. Paul Heller took the mortgage with appellant's signature on it to a former employee (of Paul Heller) who was a notary public, and Charlene Heller's signature on the mortgage was acknowledged. Paul Heller then delivered the documents to the escrow agent at which time he obtained a check in the amount of $6,940.51 made payable to Charlene Heller.

The check was endorsed by Charlene Heller payable to her husband. She alleges that Paul Heller told her to sign the check that way, and that she did not know what the money was to be used for. She testified that she received none of the money from these transactions, although it is admitted that the repairs in question were made upon the house.

A letter was sent to Charlene Heller by the Collection Department of the title company on 17 September 1962 giving details of the mortgage transactions and the payments to be made. Charlene Heller denied receiving this letter. On 23 August 1963 a letter was sent to Charlene Heller indicating that the final payment was due 10 September 1963, and on 20 May 1964 the title company, by letter, notified Charlene Heller that the documents were withdrawn from their files and turned over to the plaintiff, Mr. Levine. Charlene Heller denies receiving any of these letters. Charlene Heller denied making any mortgage interest payments on the second mortgage, and it would appear that any payments made were made by defendant Paul Heller.

Plaintiff filed a complaint in three counts: Count One alleging a duly and properly executed mortgage; Count Two alleging a mortgage by estoppel; and Count Three for specific performance of a contract to mortgage under § 33–437 A.R.S. The answer of the defendant Charlene Heller admitted the signatures on all these documents, but denied that the mortgage was acknowledged before a notary public. Defendant also filed a counterclaim seeking to cancel the note and mortgage.

After various pleadings and depositions the plaintiff withdrew the first cause of action and at trial relied on the second and third causes of action in the complaint. The matter was tried to a jury and the jury returned a verdict in favor of the plaintiffs Louis Levine and Esther Levine, his wife. From this verdict, judgment, and motion denying new trial and motion for judgment notwithstanding the verdict, Charlene Heller brings this appeal.

## I. WERE THE INSTRUMENTS "DELIVERED" AND PROPERLY ADMITTED IN EVIDENCE?

Appellant contends that the documents in question were never delivered according to the legal definition of that term. The statute in effect at the time this transaction took place defines "delivery" as follows:

"6. 'Delivery' means transfer of possession, actual or constructive, from one person to another." § 44–591 A.R.S.

And the Uniform Commercial Code defines "delivery" as follows:

"14. 'Delivery' with respect to instruments, documents of title, chattel paper or securities means voluntary transfer of possession." § 44–2208 A.R.S.

In the instant case it is apparent that the defendant Charlene Heller, after admittedly signing the documents, transferred possession of them to Paul Heller who placed them in escrow. Our statute at the time stated:

"* * * And where the instrument is no longer in possession of a party whose signature appears thereon, a valid and intentional delivery by him is presumed until the contrary is proved." § 44–416 A.R.S.

By statute (§ 44–416 A.R.S.) in Arizona at the time, and by general case law, the burden of showing an improper delivery of the documents in question rests on the defendant:

"In her special defense, the defendant alleges that the mortgage deed was improperly executed and that it had never been delivered by the decedent or her agents to the plaintiff. The burden of proving these affirmative defenses rested on the defendant. Bell v. Bloom, 146 Conn. 307, 309, 150 A.2d 300; First National Bank of Bridgeport v. National Grain Corporation, 103 Conn. 657, 662, 131 A. 404. * * * Possession of the deed by the grantee and the execution of the attestation clause are prima facie proof of delivery. Bell v. Bloom, supra, 146 Conn. 308, 150 A.2d 300, and cases cited. The defendant did not sustain her burden of proof with respect to these special defenses." Molk v. Micklewright, 151 Conn. 606, 201 A.2d 183, 185, (1964). We hold there was sufficient evidence from which the jury could find that there was delivery within the meaning of § 44–591 A.R.S. in effect at the time the transaction took place as well as within the meaning of § 44–2208 A.R.S., being the Uniform Commercial Code enacted by our legislature in 1967.

It is admitted by all parties concerned that the mortgage was not acknowledged, and the plaintiff had withdrawn the first cause of action alleging a properly executed note and mortgage. We believe that the instruments were properly admitted in evidence under the theory of the case espoused by the plaintiff. The contention by the defendant that the signature was obtained by trick and deceit on the part of Paul Heller was properly covered by the instructions, and the facts put forth by the defendant were evidently not found to be the case by the trier of fact.

## II. WAS THERE AN EQUITABLE MORTGAGE?

The Arizona statute provides:

"When an instrument in writing, intended as a conveyance of real property or some interest therein, fails wholly or in part to take effect as a conveyance by virtue of the provisions of this chapter, it is valid nevertheless and effectual as a contract upon which a conveyance may be enforced, as far as the rules of law permit." § 33–437 A.R.S.

This statute is authority for the doctrine of equitable mortgages in the State of Arizona. In the instant case the mortgage was not properly acknowledged as required by the Arizona statutes §§ 33–401 and 33–701 A.R.S. The fact that the mortgage was not properly acknowledged does not invalidate it as an equitable mortgage, but makes it a contract which may be specifically enforced as between the parties since equity considers that done which ought to

be done. We believe that the documents submitted in evidence as well as the actions of the parties as gleaned by the trier of the facts shows that an equitable mortgage has been established by the plaintiff. Our Court has stated:

"While the 1954 lease was not a legal conveyance of a leasehold interest, it was an enforceable contract for a lease between the parties thereto, and under the principle that equity regards that as done which ought to be done, a landlord-tenant relationship, was created between them. Murphey v. Brown, 12 Ariz. 268, 277, 100 P. 801 (1909)." Keck v. Brookfield, 2 Ariz.App. 424, 427, 409 P.2d 583 (1965).

## III. JURY INSTRUCTIONS

The third question raised is whether the trial court erred in instructing the jury concerning a confidential relationship. The instruction complained of reads as follows:

"In order to justify a finding of fraud it must be established by the person claiming such fraud that there was a right to rely on representations which are claimed to have been made. Unless the party claiming fraud can establish a confidential relationship in which the parties are bound to act one for the benefit of the other and can take no advanage to himself for his acts relating to the interest of the other, no fraud can be found. Mere confidence or implicit faith in another is insufficient to form such relationship. "To establish a fiduciary relationship, and a violation of which fraud is sought to be based, there must be something approximating business agency, professional relationship, or family tie impelling or inducing the trusting party to relax the care and vigilance he or she would ordinarily exercise. A confidential relation is a relation of the parties in which one is bound to act for the benefit of the other and can take no advantage to himself from his acts relating to the interest of the other. It is not sufficient to have mere confidence or implicit faith in another's honesty and integrity to constitute a fiduciary or confidential relationship. So too, merely friendly relations are sufficient for this purpose. Fraud may never be established by doubtful, vague, speculative, or inconclusive evidence, and always the proof must be sufficient to overcome the initial presumption in favor of honesty."

When a party has raised the defense of fraud one of the elements of fraud which must be proven is the right to rely upon the false representations. In Re McDonnell's Estate, 65 Ariz. 248, 179 P.2d 238 (1947). Although the appellant and Paul Heller were divorced the record indicates that they were on friendly terms and continued to have business dealings which related to matters entered into prior to their divorce. In view of the relationship and dealings between the parties we are of the opinion that there was sufficient evidence to submit the question of a confidential relationship to the jury.

But even if a confidential relation cannot be established our Court has stated:

"It is well settled in this jurisdiction that a person's negligence in failing to read a document which he was requested to sign and which he had never seen before precludes recovery on the basis of fraud, there being no right to rely on the representations concerning the document." Apolito v. Johnson, 3 Ariz.App. 232, 236, 413 P.2d 291 (1966).

It is further contended by the appellant that since her signature was obtained by fraud it amounts to a forgery and therefore invalid as either a mortgage or a contract for conveyance. We do not agree with the theory espoused by the appellant. Forgery is defined by § 13–421 A.R.S., and nowhere does it appear that a person is guilty of this statute for fraudulently inducing another to sign an instrument of conveyance. Our Supreme Court has stated:

"The trial judge has not only the right and the power but the solemn duty to see

that the matters presented to the jury are not unduly confused with circumstances having no bearing on the issues * * *." City Transfer Company v. Johnson, 72 Ariz. 293, 296, 233 P.2d 1078 (1951).

An instruction regarding forgery would have clearly confused the issues presented to the jury.

Judgment affirmed.

DONOFRIO and STEVENS, JJ., concur.