515 P.2d 606

Florence S. WIXOM, Appellant,

v.

Howard R. INGHAM and Rose S. Ingham,
Husband and wife, Appellees.

No. 1 CA-CIV 1883.

Court of Appeals of Arizona,
Division 1,
Department B.

Nov. 6, 1973.

Rehearing Denied Dec. 5, 1973.

Review Denied Jan. 15, 1974.

Burch, Cracchiolo, Levie, Guyer & Weyl
by Joseph L. Moore, Phoenix, for appellant.

Preston, Flournoy & Flick by William R.
Preston, Flagstaff, for appellees.

OPINION

JACOBSON, Chief Judge.

This appeal from a judgment of foreclosure of a $60,000 note and mortgage raises the issue of whether the recording of a mortgage constitutes a valid delivery and whether the evidence sustains the trial court's determination that the defendant owed plaintiffs $60,000.

Before setting out the facts in this case, the court notes that the evidence presented in this matter is diametrically opposed on both sides. The facts, therefore, are stated in a light most favorable to supporting the trial court's judgment.

The plaintiff-appellee Rose S. Ingham and the defendant-appellant Florence S. Wixom are sisters. Over a period of years commencing in 1955, the plaintiff made several cash loans to her sister in various amounts. These loans were not evidenced by any writing, nor were they

secured in any manner. In late 1963 or early 1964, at a time when plaintiff had loaned the defendant approximately $50,500.00, the defendant requested additional loans from plaintiff to pay debts defendant had incurred as the result of building a restaurant known as the "Red Bull" on property owned by the defendant. Plaintiff was reluctant to advance additional monies unless the past indebtedness and any future advances were secured in some manner. According to the plaintiff, defendant agreed to execute a $60,000 promissory note representing both past and future indebtedness and to secure the same by a mortgage on property owned by the defendant. Based upon this representation plaintiff made additional advances.

Apparently the note and mortgage were not immediately forthcoming and the plaintiff made repeated demands upon her sister for the promised note and mortgage. Finally, in 1965, defendant executed a promissory note and mortgage in the face amount of $60,000 in favor of the plaintiff. Both were recorded in Coconino County, the county where the property was located. The note, on its face calls for annual payments and bears no interest. The recorded mortgage was returned by the county recorder to the defendant. Neither the original note nor the mortgage were ever in the physical possession of the plaintiff.

Apparently, at this time the relationship between the two sisters began to deteriorate.[1] In any event, the plaintiff, through a search of the Coconino County records became aware of the recorded mortgage in 1967. Again after demands for payment, this suit for foreclosure of the mortgage was initiated in 1969.

At the time of the trial to the court, sitting without a jury, the testimony of the principals was diametrically opposed as previously indicated. Defendant denied that she had ever received any monies from the plaintiff and asserted that the mortgage was recorded on the advice of

another sister, merely for the purpose of frustrating any material-men's or mechanic's liens which could have been placed on the property for unpaid bills resulting from the construction on the Red Bull restaurant. This assertion by the defendant was unsupported by any other evidence such as unpaid material or labor bills or by the testimony of the sister who allegedly gave her the advice. On the other hand, the plaintiff presented evidence in addition to the executed mortgage which is susceptible to the inference that at the time defendant executed the note and mortgage it was to be for plaintiff's benefit.

The case was tried, from the defendant's standpoint, on the basis there was absolutely no consideration for the note and mortgage and they were of no legal effect as between the parties. The trial court found against defendant on findings of fact and conclusions of law, entered judgment for the plaintiff for the face amount of the note and foreclosed the mortgage. Following denial of defendant's motion for new trial, this appeal was prosecuted.

Defendant first contends that since the plaintiff never had physical possession of the note and mortgage there was no legal delivery of these instruments and thus they have no legal effect. Plaintiff counters by pointing to the recordation of the mortgage which set forth the note verbatim as a constructive delivery of these instruments so as to give them binding effect.

The general rule is well established that "[a] delivery and acceptance of the mortgage are essential to its validity. Without these there is no mortgage, but only an attempt at one, or a proposition to make one." Jones, Leonard A., "Chattel Mortgages and Conditional Sales," Vol. 1, § 104, pages 182–183 (6th Edition, 1933; footnote omitted.) *See* Heller v. Levine, 7 Ariz.App. 231, 437 P.2d 983 (1968). At common law, which has been embodied in statutory form (former A.R.S. § 44–416,

---

1. From the record it appears this deterioration was precipitated by the death of the parties' mother and the ensuing squabble over her estate.

Uniform Negotiable Instruments Act in effect at the time of the transaction) delivery was the final act of execution of an instrument from which it could be implied that the instrument was to have an operative effect. Central States Building & Loan Ass'n v. Bitler, 149 Kan. 349, 87 P.2d 631 (1939). This delivery may be actual, that is, physical change of possession, or constructive, that is, inferred from the circumstance. A.R.S. § 44–591 (statute in effect at time of this transaction). Plaintiff contends it is the recording of the mortgage which results in the constructive delivery of the note and mortgage in this case. To determine the correctness of this position it is necessary to analyze the act of recording insofar as it relates to mortgages. Our recording statutes are primarily "notice statutes".

County of Pinal v. Pomeroy, 60 Ariz. 448, 139 P.2d 451 (1943). To effect this "notice", persons who find an instrument recorded can be expected to act upon the presumption that the instrument is in existence and is genuine, and therefore govern their affairs accordingly. Lewis v. State, 32 Ariz. 182, 256 P. 1048 (1927). We are of the opinion that this same presumption must also govern those who execute and place instruments of record, that is, as against a person who executes and records a document it will be presumed that the instrument is genuine. Of course, for the instrument to be genuine it must have been delivered. This is also consistent with the common law reason for delivery—an act implying the operative effect of the instrument. Recording of the mortgage insofar as the public at large is concerned had at least the effect of giving notice that a lien may possibly exist on that property. We will therefore presume that a person who executes and records an instrument does so with this intent to make the instrument operative by placing a lien on the property—a constructive delivery. Such a presumption is not conclusive. Brown v. Rowland, 137 N.J.Eq. 462, 45 A.2d 592 (1946), but we hold that recording of a mortgage by the person who executed it is *prima facie*

evidence of delivery of that instrument. The burden of proof of non-delivery, faced with the *prima facie* evidence of delivery, is on the mortgagor. Heller v. Levine, *supra*.

Defendant attempted to meet this burden by her unsupported testimony of a contrary intent. The trial court being the proper arbiter of the credibility of witnesses, chose not to believe her. We cannot say, as an appellate court in view of the evidence, that the trial court chose incorrectly. We therefore hold that there was a constructive delivery of the note and mortgage by its recordation so as to give legal effect to the instruments as between the parties.

Defendant's attack upon the amount of the monies actually changing hands between the plaintiff and defendant is in actuality a request to this court to judge the credibility of the witness. Whether the plaintiff loaned monies to the defendant, and if so, the amount thereof are questions answered by the trial court and we are bound by that determination. However, insofar as the arithmetic involved in adding up these various sums testified to by the plaintiff, we are not so bound. Plaintiff testified that on one occasion in 1955, she loaned the defendant $14,000 in cash; on another occasion she advanced her sister $4,500 for a well that was being dug on the ranch; in 1957 she loaned the defendant $32,000 to be used by other relatives to buy a business; plaintiff also gave to the defendant two checks to cover expenses incurred in the defendant's building of the Red Bull restaurant—one for $1,001.50 and the other for $2,263.00. Plaintiff was unable to come forward with any other sums to justify the $60,000 note and mortgage. Since plaintiff admitted that a portion of the $60,000 was for future advances, it is understandable that the total cash outlay would not equal the total amount of the mortgage. The total of these sums is $53,746.50. While notes for future advances are valid, as between the parties the payee may enforce the note only for the amount actually loaned. Fer-

guson v. Mueller, 115 Colo. 139, 169 P.2d 610, 613 (1946).

The judgment of the trial court insofar as that judgment reflects the amount due under the promissory note is modified to the sum of $53,764.50 and as so modified is in all other respects affirmed.

EUBANK, P. J., and HAIRE, J., concur.