829 P.2d 540

**TRI–CIRCLE, INC., a corporation, Plaintiff–Respondent,**

v.

**BRUGGER CORPORATION, and Western Ag Systems, Inc., a corporation, Defendants–Appellants–Cross Respondents,**

**and**

**Jason WEIMER, Defendant–Respondent–Cross Appellant.**

No. 18314.

Court of Appeals of Idaho.

Jan. 27, 1992.

Rehearing Denied March 26, 1992.

Webb, Burton, Carlson, Pedersen & Webb, Twin Falls, for defendants-appellants-cross respondents. Lloyd J. Webb argued.

Parsons, Smith, Stone & Fletcher, Burley, for plaintiff-respondent Tri–Circle. William A. Parsons argued.

Ling, Nielsen & Robinson, Rupert, for defendant-respondent-cross appellant Weimer. Brent T. Robinson argued.

## SUBSTITUTE OPINION

The Court's prior opinion dated September 30, 1991, is hereby withdrawn.

SILAK, Judge.

This action was brought by Tri–Circle, Inc., to obtain payment for materials and labor supplied to farm property owned by Brugger Corporation (hereinafter Brugger/Western Ag)[1] and leased and operated by Jason Weimer. The district court, sitting without a jury, found that Weimer had acted as Brugger/Western Ag's agent when he ordered materials and labor from Tri–Circle to repair components of the farm's irrigation system. The district court entered an amended judgment (hereinafter the judgment) in favor of Tri–Circle against Brugger/Western Ag, and dismissed Tri–Circle's claim against Weimer, finding that Weimer had acted as the agent of a disclosed principal. The district court ordered Brugger/Western Ag to pay Tri–Circle's attorney fees, and Tri–Circle to pay Weimer's attorney fees. Brugger/Western Ag appeals, arguing a lack of substantial evidence to support the district court's finding that Weimer was Brugger/Western Ag's agent, and disputing the applicability of service charges. Weimer has cross-appealed, arguing that Brugger/Western Ag, not Tri–Circle, should be liable for Weimer's attorney fees.

## FACTS

At trial, Weimer testified that in January of 1987, while in California, he met with

---

1. Western Ag Systems, Inc., is a wholly-owned subsidiary of Brugger Corp. which managed the farm property in question for Brugger Corp.

Grant McQueen, manager of Western Ag Systems, to discuss Weimer's proposal for a new lease agreement for the farm. He further testified that one of the terms proposed to McQueen was that Brugger/Western Ag pay for repairs to certain components of the farm's irrigation system which had fallen into a state of dysfunction. Under the proposal, the components contemplated for repair by Brugger/Western Ag were a specified rain-cat pivot sprinkler, some mainline piping, and various Rain Bird sprinklers on hand and wheel line sprinkler systems. Weimer testified that McQueen said the proposed terms looked good, but that he could not approve the proposal until Mr. Brugger had reviewed it.

Weimer further testified that a week following the meeting in California he spoke with McQueen by telephone and informed McQueen that he would not be able to farm the land covered by the dysfunctional irrigation components mentioned above unless Brugger/Western Ag had those components of the irrigation system repaired. Weimer testified that at that point McQueen told him to go ahead and have the repairs performed and that Brugger/Western Ag would pay for them.

In the spring of 1987, Weimer contacted Tri–Circle relative to providing labor and materials for the repair of irrigation systems on the Brugger/Western Ag farm and other land farmed by Weimer. Weimer asked Tri–Circle to set up an account separate from his personal account, to which materials and labor expended on specified components of the irrigation system would be charged to Brugger/Western Ag. Weimer informed Tri–Circle that the bills on the Brugger/Western Ag account should be sent to him, and that he would, after verifying their accuracy, forward them to Brugger/Western Ag.

By June 1987, Tri–Circle had charged $9,769.33 to the Brugger/Western Ag. account. The bills for these charges had been sent to Weimer, who in turn forwarded them to Brugger/Western Ag. On June 30, 1987, Brugger/Western Ag paid directly to Tri–Circle the $9,769.33 owing on the account. This amount was paid by a check

signed by Grant McQueen and Joseph Carlino, comptroller of Brugger Corp.

Subsequent charges totalling $11,540.71 were billed to the Brugger/Western Ag account in 1987. These bills were also sent to Weimer, who testified that he forwarded them to Brugger/Western Ag. Tri–Circle, however, received no further payments from Brugger/Western Ag, nor any other communications regarding Tri–Circle's billings or Brugger/Western Ag's willingness to pay on the account.

Brugger/Western Ag claims it has no record of any invoices sent by Weimer, including the initial invoices on which it paid. The evidence showed that by November or December of 1987 Grant McQueen had been fired by Brugger/Western Ag. McQueen was not located to testify at trial.

Michael Kechter, general manager and president of Tri–Circle, testified that he dictated a letter in December 1987, requesting Brugger/Western Ag to pay the amount owing on its account. Sandy Johnson, Kechter's secretary at Tri–Circle, testified that she typed this letter and sent it directly to Brugger/Western Ag's address as found on the check Brugger/Western Ag had sent in June. Evidence showed that this address was at all times Brugger/Western Ag's current address. Johnson further testified that this letter was not returned to Tri–Circle. Brugger/Western Ag claims it has no record of this letter.

In January of 1988, Tri–Circle's attorney sent a letter to Brugger/Western Ag, demanding payment for the services billed to the Brugger/Western Ag account. Brugger/Western Ag argues that this is the first time it became aware of the account with Tri–Circle. Brugger/Western Ag denied any liability on the account, claiming that Weimer had no authorization to set up such an account. After Brugger/Western Ag refused to pay on the account, Tri–Circle sued Brugger/Western Ag and Weimer to recover the account's balance of approximately $11,500, plus service charges and attorney fees.

Following trial, the district court specifically found that Weimer had acted as the

**954**

authorized agent of Brugger/Western Ag in purchasing the labor and materials necessary to repair the specified irrigation equipment, and that Brugger/Western Ag was a disclosed principal. Brugger/Western Ag contends on appeal that the district court erred in finding it liable on the account to Tri–Circle based on an agency relationship between Weimer and itself.

## STANDARD OF REVIEW

■ Once sufficient evidence is submitted to make the issue of agency disputable, the issue becomes a question of fact. *Simplot Soilbuilders v. Leavitt,* 96 Idaho 17, 18, 523 P.2d 1363, 1364 (1974). Findings of fact by a trial court will not be disturbed on appeal unless they are clearly erroneous. I.R.C.P. 52(a). Clear error will not be deemed to exist if the findings are supported by substantial and competent, though conflicting, evidence. *Sun Valley Shamrock v. Travelers Leasing,* 118 Idaho 116, 118, 794 P.2d 1389, 1341 (1990). *Rasmussen v. Martin,* 104 Idaho 401, 404, 659 P.2d 155, 158 (Ct.App.1983). Consequently, our standard for reviewing a trial court's findings and conclusions is to determine whether the findings of fact are supported by substantial, competent evidence, and to determine whether the trial court properly applied the law to the facts as found. *Sun Valley Shamrock,* 118 Idaho at 118, 794 P.2d at 1341; *Bischoff v. Quong–Watkins Properties,* 113 Idaho 826, 828, 748 P.2d 410, 412 (Ct.App.1987).

## AGENCY

The Supreme Court has stated that "[t]here are three separate types of agency, any of which are sufficient to bind the principal to a contract entered into by an agent with a third party,.... The three types of agencies are: express authority, implied authority, and apparent authority." *Bailey v. Ness,* 109 Idaho 495, 497, 708 P.2d 900, 902 (1985). Here, the district court specifically found that "evidence of all three types of agency exist in this case." We conclude that there was substantial evidence to support this finding.

■ The district court had substantial evidence upon which to find an express agency relationship between Weimer and Brugger/Western Ag. Express authority may be found when there is evidence that the principal has explicitly granted the agent authority to act in the principal's name. *Bailey,* 109 Idaho at 497, 708 P.2d at 902. Weimer testified that he had been explicitly authorized by Grant McQueen, an officer of Brugger/Western Ag, to purchase repairs in the name of Brugger/Western Ag. Kechter testified that Weimer opened an account with Tri–Circle in the name of Brugger/Western Ag, and the documentary evidence shows that on June 30, 1987, Brugger/Western Ag paid $9,768.33 directly to Tri–Circle on the account set up by Weimer. Three of the four invoices which Brugger/Western Ag paid expressly stated that the charges were for materials and labor sold to "Brugger Corp. c/o Jason Weimer." The other invoice paid by Brugger/Western Ag simply stated that the materials and labor were sold to "Jason Weimer." All this evidence constitutes substantial competent evidence to support the trial court's finding that Weimer had been granted express authority by Brugger/Western Ag.

■ The trial court's finding of implied authority is also supported by substantial evidence. "Implied authority refers to that authority 'which is necessary, usual, and proper to accomplish or perform' the express authority delegated to the agent by the principal." *Bailey,* 109 Idaho at 497, 708 P.2d at 902. The district court found, based on competent evidence, that Weimer had been granted express authority to purchase irrigation repairs in the name of Brugger/Western Ag. Weimer's opening of an account with Tri–Circle in the name of Brugger/Western Ag, and charging repairs performed to that account, was necessary, usual, and proper in performing the expressly authorized act of purchasing irrigation system repairs.

■ Apparent authority differs from express and implied authority in that it is not based on the words and conduct of the principal toward the agent, but on the prin-

cipal's words and conduct toward the third party. Apparent authority may be found when a principal "voluntarily places an agent in such a position that a person of ordinary prudence, conversant with the business usages and the nature of a particular business, is justified in believing that the agent is acting pursuant to existing authority." *Bailey,* 109 Idaho at 497, 708 P.2d at 902. As stated above, Tri–Circle billed Brugger/Western Ag over $9,000 for labor and materials charged to an account set up by Weimer in Brugger/Western Ag's name. The invoices Brugger/Western Ag received for Tri–Circle's services clearly stated that Weimer was obtaining irrigation repairs and charging them to Brugger/Western Ag. Based on Brugger/Western Ag's payment of these charges, the district court could find that Brugger/Western Ag had clothed Weimer with apparent authority by voluntarily placing him in such a position that Tri–Circle would justifiably believe that Weimer was acting pursuant to existing authority.

■ On appeal, Brugger/Western Ag argues that Tri–Circle was aware of the common practice among landlords and tenant farmers to have the landlord pay the "start-up costs" for farming operations each season and have subsequent maintenance and repairs be the responsibility of the tenant farmer, and therefore, Tri–Circle could not justifiably rely on Brugger/Western Ag's initial payments as an indication that Brugger/Western Ag would make any further payments on the account. We disagree.

Brugger/Western Ag failed to introduce any evidence at trial to show that its payment of $9,769.33 to Tri–Circle was to be for Weimer's start-up costs only. Brugger/Western Ag argued that no one at Brugger/Western Ag other than McQueen and Carlino knew about the account with Tri–Circle until receiving the demand letter, seven months after McQueen's initial payment on the · account. Neither McQueen or Carlino testified as to his intent in making the payment which Brugger/Western Ag claims was only to be for Weimer's start-up costs. Since no one else

at Brugger/Western Ag knew about the payment or the account, the trial court had no evidence from which to find that Brugger/Western Ag intended to pay only for Weimer's start-up costs.

Even more importantly, Brugger/Western Ag failed to introduce any evidence to suggest that Tri–Circle understood the payment was only for Weimer's start-up costs. To the contrary, Tri–Circle and Weimer presented evidence that the account was not established for the payment of Weimer's start-up costs, but for the payment of all repairs performed on certain worn-out components of the farm's irrigation system. Tri–Circle's president testified that the Brugger account was set up to pay for repairs to certain specified components of the irrigation system, without reference to the time of year it was in relation to the planting season. Tri–Circle was also aware that while these repairs were being made during the "start-up" season, Tri–Circle made other repairs to Weimer's irrigation system at the same time, which repairs were charged to a separate account established in Weimer's name. There was substantial evidence to show that Tri–Circle was not operating on the belief that the bills Brugger paid were intended to be for "start-up" repairs only. The district court had before it substantial evidence upon which to find Tri–Circle's reliance on Weimer's apparent authority was reasonable and justifiable.

■ Brugger/Western Ag argues on appeal that Weimer's testimony regarding the express authority granted to him by McQueen was incompetent evidence to establish the existence of agency. In support of this argument Brugger/Western Ag cites the rule that the statements of an alleged agent, standing alone, are insufficient to prove an agency relationship. *Killinger v. Iest,* 91 Idaho 571, 576, 428 P.2d 490, 495 (1967). This rule, however, does not support Brugger/Western Ag's position when it is applied in context. The statements of a purported agent are incompetent to establish agency only when a third party is offering those statements to establish an agency relationship between

the purported agent and an alleged principal. In that situation, the out-of-court statements of the purported agent being offered by the third party are hearsay and are inadmissible. In contrast, Idaho's Supreme Court has held that the statements of a purported agent, when offered by the purported agent in court, are admissible to prove the existence and scope of an agency relationship.

> While an agency relation cannot be proved by the *extra-judicial* statements and declarations of one purporting to act as agent, the fact of agency, when it rests in a parol agreement, may be established at trial by the testimony of the agent himself. The agent's extra-judicial statements are mere hearsay, but at trial the agent's testimony concerns his relationship to the alleged principal. The relationship being in issue and the witness being subject to cross-examination, the agent's testimony cannot be termed hearsay.

*Simplot Soilbuilders*, 96 Idaho at 18, 523 P.2d at 1364 (quoting *Killinger v. Iest*, 91 Idaho 571, 576, 428 P.2d 490, 495 (1967) (emphasis added)). This well settled rule has been stated clearly in other sources as well.

> The rule that "the declarations of an agent are not admissible to prove the fact of agency," refers exclusively to declarations made by the agent outside the courtroom, since it is well settled that when on the witness stand, the agent may testify what his principal told him to do, and by such testimony establish the fact of the agency.

Annotation, *Competence, as Against Principal, of Statements by Agent to Prove Scope, as Distinguished from Fact, of Agency*, 3 A.L.R.2d 598, 599 (1949).

In the present case, the fact of express agency rested in an alleged parol agreement between Weimer and McQueen. Weimer, the purported agent, testified as to what he was told by McQueen regarding the procurement and payment of repairs to the irrigation system:

> WEIMER: ... In the proposal [made by Weimer to McQueen, Brugger's agri-

cultural manager] it states that I needed to have a new pivot, some new sprinkler heads, and some new main line. And it came time to farm and I did not have those items and I told Grant McQueen, I will not start the old pivot. We've got to do something.

> ....

> WEIMER: So he did say, Okay, get the sprinkler heads, which I did, which we've been billed for. I said, what about the main line and the pivot? I said, I cannot afford to start them. He told me, You start them, send me the bills, I will pay them.

> MR. ROBINSON: And did you then—

> WEIMER: I agreed to do that and I did that.

> MR. ROBINSON: Who did you contact for the purpose of doing those—that work?

> WEIMER: I contacted Tri–Circle.

Because Weimer was testifying as to the statements of a party opponent, his testimony was not hearsay, and, under *Killinger*, his testimony was competent to establish the fact of agency.

▪ Brugger/Western Ag failed to introduce any evidence directly to contradict the evidence introduced by Tri–Circle and Weimer. Brugger/Western Ag's defense consisted of testimony that Brugger/Western Ag had no record of either the invoices which Weimer said he had forwarded to them, or the letter which Johnson testified she had sent, attempting to establish by negative implication that Brugger/Western Ag did not know of or authorize the account with Tri–Circle.

Based on the evidence presented, the district court could have found this defense to be both weak and incomplete. The fact that Brugger/Western Ag had no record of these documents does not mean it never received them. Obviously, the first four invoices sent by Tri–Circle in care of Weimer were received by Brugger/Western Ag, and at least two Brugger/Western Ag officer's—McQueen, Western Ag System's manager, and Carlino, Brugger Corp.'s comptroller—were aware of the account, since those officers signed the check in

payment of the invoices and the check was remitted directly to Tri–Circle. In spite of the fact that Brugger/Western Ag must have received the invoices and issued the check, Brugger/Western Ag admitted it had no record of either the invoices or the check. Based on this evidence, the fact that a document was not in Brugger/Western Ag's files does not appear to be a credible indication that Brugger/Western Ag never received the document or knew about it.

In any event, even if the district court accepted Brugger/Western Ag's defense—that it has no record of the invoices, check, or letter—the district court could still have found, based on competent evidence presented at trial, that McQueen had expressly authorized Weimer to make the repairs, that McQueen had received each of the billings forwarded by Weimer, that McQueen had paid the initial charges to the account, and that McQueen, without notifying Tri–Circle, simply stopped paying on the account. Brugger/Western Ag failed to introduce any evidence to negate these facts, and because McQueen was general manager of Western Ag Systems, he had actual authority both to authorize Weimer to set up the account and to make payments on the account on behalf of Brugger/Western Ag. If the district court found that McQueen did so, then it is no defense for Brugger/Western Ag to claim that no one else in the company knew about the account or the payment on the account.

Based on the above, we conclude that the district court's findings as to agency were supported by substantial, competent evidence, and we will not disturb those findings on this appeal.

### SERVICE CHARGES

■ Brugger/Western Ag also assigns error to the district court's finding that, pursuant to I.C. § 28–2–207 and *Rangen, Inc. v. Valley Trout Farms, Inc.,* 104 Idaho 284, 658 P.2d 955 (1983), Brugger/Western Ag was liable for finance charges on the Tri–Circle account. The district court's finding as to the applicability of finance charges involved mixed questions of law and fact.

Appellate judges should defer to findings of fact based upon substantial evidence, but they ought to review freely the conclusions of law reached by stating legal rules or principles and applying them to the facts found. *See, e.g., City of Burley v. McCaslin Lumber Co.,* 107 Idaho 906, 693 P.2d 1108 (Ct.App.1984). *Staggie v. Idaho Falls Consol. Hospitals,* 110 Idaho 349, 351, 715 P.2d 1019, 1021 (Ct.App.1986). Accordingly, in the present case, we review the district court's factual findings for clear error, and we review freely the district court's conclusion that under Idaho law the facts as found justify the application of service charges. *Id.*

Because this action involves the sale of goods as defined in I.C. § 28–2–105, it is governed by the provisions of the Uniform Commercial Code (Code), codified as I.C. §§ 28–1–101 *et seq.* Under the Code, contracts which contain additional terms in the acceptance are governed by I.C. § 28–2–207, which reads:

Additional terms in acceptance or confirmation.—(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

(a) the offer expressly limits acceptance to the terms of the offer;

(b) they materially alter it; or

(c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

Pursuant to the district court's findings discussed above, a contract had been formed between Tri–Circle and Brugger/Western Ag. The finance charges con-

tained in the invoices sent by Tri–Circle to Weimer, and from Weimer to Brugger/Western Ag, were additional terms to the contract under section 28–2–207.

The question for us to decide then, is whether these additional terms became part of the contract. This question is governed by subsection (2) of section 28–2–207, which provides that when a contract is between merchants the additional terms become a part of the contract unless (a) the offer expressly limits acceptance to the terms of the offer, (b) the additional terms materially alter the contract, or (c) notification of objection to the terms has already been given or is given within a reasonable time after notice of the additional terms is received.

■ Initially we must determine whether this contract was "between merchants." Idaho Code section 28–2–104 defines the words "merchant" and "between merchants."

**28–2–104. Definitions—"Merchant"— "Between merchants"—"Financing agency."**—(1) "Merchant" means a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction....

....

(3) "Between merchants" means in any transaction with respect to which both parties are chargeable with the knowledge or skill of merchants.

The district court correctly applied this section to the transaction between Tri–Circle and Weimer/Brugger/Western Ag, since all the parties were merchants with respect to this contract, they all had "knowledge or skill peculiar to the practices or goods involved in the transaction." Comment 2 to 28–2–104 reveals the level of expertise required to be a merchant under this section.

Sections 2–201(2), 2–205, 2–207 and 2–209 dealing with the statute of frauds, firm offers, confirmatory memoranda and modification rest on normal business practices which are or ought to be typical of and familiar to any person in business.

For purposes of these sections almost every person in business would, therefore, be deemed to be a "merchant" under the language "who ... by his occupation holds himself out as having knowledge or skill peculiar to the practices ... involved in the transaction ..." since the practices involved in the transaction are non-specialized business practices such as answering mail. In this type of provision, banks or even universities, for example, well may be "merchants." But even these sections only apply to a merchant in his mercantile capacity; a lawyer or bank president buying fishing tackle for his own use is not a merchant.

Clearly, under these provisions Tri–Circle, Weimer and Brugger/Western Ag are all merchants with respect to this transaction for materials and repairs for a farm irrigation system. Therefore, the additional terms regarding finance charges became part of the contract unless one of the enumerated exceptions (§ 28–2–207(2)(a), (b) or (c) *supra*) is present. In this case, there is no evidence that the contract offer expressly limited acceptance to the terms of the offer or that Weimer or Brugger/Western Ag objected to the finance charges within a reasonable time after notice of those charges was received. The district court specifically found that "sufficient notice was sent directly to Brugger and its agent Weimer to justify imposing financial charges in this matter. Further the fact that Brugger paid the first bill or [sic] is proof that they received these billings and knew of the financial charge being assessed."

■ The following evidence was presented at trial to support this finding: Brugger/Western Ag received at least the first four invoices from Tri–Circle; these invoices clearly state, "Accounts not paid within 30 days from the date of billing will be subject to a finance Charge computed at a periodic rate of 1½% per month which is an annual percentage rate of 18%;" and Brugger/Western Ag paid these invoices without objection to their terms.

Nor were the additional terms assessing finance charges material alterations of the contract. Under *Rangen*, additional terms which add finance charges for past due accounts are not material alterations under the code. *Rangen*, 104 Idaho at 291, 658 P.2d at 962. Because this was a contract between merchants and none of the exceptions of section 28–2–207(2)(a), (b) or (c) apply, the additional terms regarding finance charges became part of the contract between Tri–Circle and Brugger/Western Ag. The district court's factual findings regarding notice and failure to object were supported by substantial, competent evidence, and therefore were not clearly erroneous. Because the district court properly applied these facts to the law set forth in the Uniform Commercial Code and *Rangen*, we affirm the district court's finding as to service charges.

## ATTORNEY FEES BELOW

In his cross-appeal, Weimer claims that the district court erred in assessing his costs and attorney fees against Tri–Circle, asserting that his attorney fees should have been assessed against Brugger/Western Ag instead. The following is a review of the facts out of which this issue arises. On June 27, 1989, the district court issued its initial findings of fact and conclusions of law, which found and concluded that Brugger/Western Ag was liable for the disputed irrigation repair charges, as well as both Tri–Circle's and Weimer's costs and attorney fees. On July 5, Weimer filed an affidavit and memorandum of costs in the district court, claiming the amount of his costs and attorney fees expended "to defend against and resolve the claims of Tri–Circle," without specifying against whom the costs and fees should be assessed. On that same day, the district court entered judgment awarding Weimer his costs and fees against Brugger/Western Ag. On July 10, Brugger/Western Ag filed an objection to the award to Weimer, and subsequently filed motions to amend the trial court's findings, conclusions, and judgment. On July 31, a hearing was held on Brugger/Western Ag's motions. In an opinion dated August 31, 1989, the district

court reversed its original decision that Brugger/Western Ag should pay for Weimer's costs and fees, deciding to assess Weimer's costs and fees against Tri–Circle instead.

In this appeal, Brugger/Western Ag challenged the trial court's judgment as to Tri–Circle's claim that Brugger/Western Ag was liable for the repairs charged to the disputed account. Both Tri–Circle and Weimer filed respondents' briefs with respect to the issues raised in Brugger/Western Ag's appeal, and Weimer cross-appealed with respect to the trial court's order assessing Weimer's costs and attorney fees against Tri–Circle rather than against Brugger/Western Ag. Tri–Circle did not cross-appeal the trial court's order holding it liable for Weimer's costs and fees.

The question before us is similar to the one addressed by this Court in *Davidson v. Beco*, 116 Idaho 696, 778 P.2d 818 (1989). In *Davidson*, we held that a non-prevailing defendant cannot be required to pay for work performed by the plaintiff's attorney on claims unsuccessfully made against other defendants. *Davidson*, 116 Idaho at 698, 778 P.2d at 820. In this case, Tri–Circle brought Weimer into this action by filing a claim against Weimer—as well as Brugger/Western Ag—for the amount of the irrigation repairs performed by Tri–Circle. *Compare Bonaparte v. Neff*, 116 Idaho 60, 773 P.2d 1147 (1989) (although no claims were pled between plaintiff and third-party defendant, plaintiff could be liable for third-party defendant's costs and attorney fees when the practical effect of the positions taken by the parties at trial reveals that they are factually adverse to one another). Weimer never filed a cross-claim against Brugger/Western Ag for indemnification on the disputed account or for his costs or attorney fees in defending against Tri–Circle's claim, and Weimer ultimately prevailed against Tri–Circle on Tri–Circle's claim against Weimer. On appeal, only Weimer has challenged the district court's order assessing his costs and attorney fees against Tri–Circle. Tri–Circle, the party ordered to pay Weimer's costs and fees, has not challenged that order.

Weimer has failed to present us with a persuasive argument that the district court erred in ordering Tri–Circle to pay the costs and attorney fees expended by Weimer in successfully defending against the claims of Tri–Circle. Therefore, the district court's order that Tri–Circle pay Weimer's costs and attorney fees is affirmed.

### FEES ON APPEAL

 We next address whether Tri–Circle is entitled to attorney fees on appeal. We conclude that this appeal has presented no meaningful issue on a question of law. Other than the meritless argument that Weimer's testimony was incompetent to establish an agency relationship, Brugger/Western Ag has merely disputed the trial court's factual findings and asked us to re-weigh the evidence. When a trial court's findings are supported by substantial evidence, the mere existence of other, conflicting evidence does not establish that the findings are clearly erroneous. *T–Craft Aero Club, Inc. v. Blough,* 102 Idaho 833, 837, 642 P.2d 70, 74 (Ct.App.1982). In this case, the substantial and competent evidence supporting the district court's findings was minimally challenged by Brugger/Western Ag's case, and we are left with the abiding belief that this appeal was brought without foundation. Accordingly, we hold that Tri–Circle is entitled to an award of reasonable attorney fees on appeal, to be determined pursuant to I.A.R. 41. Costs to Tri–Circle on Brugger/Western Ag's appeal, pursuant to I.A.R. 40.

We also award attorney fees and costs to Weimer against Brugger/Western Ag with respect to Brugger/Western Ag's appeal.

We award attorney fees and costs to Brugger/Western Ag against Weimer on Weimer's cross-appeal.

### CONCLUSION

The judgment of the district court is affirmed. Costs and attorney fees on appeal and cross-appeal as stated above. I.A.R. 40 and 41.

WALTERS, C.J., and SWANSTROM, J., concur.