911 P.2d 779

**In the Matter of the Estate of Helen Margaret (Peggy) Kolouch, Deceased,**

**Helen P. KOLOUCH, Appellant–Appellant on Appeal,**

v.

**FIRST SECURITY BANK OF IDAHO, N.A., Ron Youtz and Karena Youtz, Forrest P. Hymas, Respondents.**

No. 21508.

Court of Appeals of Idaho.

Jan. 19, 1996.

Rehearing Denied Feb. 26, 1996.

Petition for Review Denied March 8, 1996.

Lloyd J. and Curtis R. Webb, Lawyers, Twin Falls, for appellant. Lloyd J. Webb argued.

Elam & Burke, P.A., Boise, for respondents. Sandra L.U. Clapp argued.

PERRY, Judge.

Helen P. Kolouch (Helen) was the personal representative of the estate of her daughter, Helen Margaret (Peggy) Kolouch. Helen appeals from the district court's order affirming several rulings by the magistrate. Helen claims that the magistrate erred in: (1) failing to resolve each of the issues in the case in a separate proceeding; (2) removing Helen as personal representative of Peggy's estate; (3) ordering Helen to pay the attorney's fees

Peggy's estate incurred during the removal proceedings; (4) ordering Helen to return funds to the estate that she expended in a lawsuit in which she had a personal interest; (5) awarding interest on funds ordered reimbursed to the estate by Helen; (6) imposing on Helen the extraordinary costs incurred by the trustee of the estate trust which arose due to Helen's management of Peggy's estate; (7) charging the homestead and exempt property allowances for Peggy's children to the estate as it existed prior to the satisfaction of any devise; and (8) denying Helen a fee for serving as personal representative. Helen and the respondents both seek an award of attorney fees incurred in this appeal.

## I.

### FACTS AND PROCEDURE

Helen was appointed the personal representative of Peggy's estate. Peggy's will provided that her children were to receive any of her personal effects which they may choose. The remaining personal effects were to be given to Helen. The will then devised gifts of $1,000 to each of Peggy's surviving siblings and to an unrelated individual. Peggy's house and all accounts receivable from her accounting practice were to pass to Helen. The rest of Peggy's estate and her life insurance proceeds constituted the corpus for a testamentary trust which was to be held for the benefit of Peggy's two minor children. Twin Falls Bank and Trust Company was appointed trustee of the trust.[1]

Prior to Peggy's death, there were several transactions involving three pieces of real property held in whole or in part by the Kolouch family. As a result of these transactions, at the time of her death, Peggy was a tenant in common, with two of her brothers and her sister, in the Kolouch Subdivision.[2] These four individuals also owned, as joint tenants with a right of survivorship, a partial interest in what has been referred to as the pool property. The four Kolouch siblings, along with Helen, also owned, as tenants in common, the Jefferson House Condominium in Summit County, Utah. After Peggy's death, and contrary to the provisions of the will, Helen conveyed Peggy's interest in the Kolouch subdivision and the pool property to three of Peggy's siblings. Helen also conveyed Peggy's interest in the Jefferson House equally to three of Peggy's siblings and herself. Helen claims to have mistakenly believed that the properties were all held as joint tenancies with a right of survivorship, and that the estate therefore had no further interest in the properties. In addition, lots in the Kolouch subdivision were subsequently sold by the family to parties unconnected to this litigation. The estate received none of the sale proceeds. After the initiation of proceedings against her, Helen reimbursed the estate for Peggy's share of the proceeds from the sale of these lots. Helen and Peggy's siblings also reconveyed to the estate Peggy's interest in the Jefferson House and the Kolouch subdivision. The disposition of the pool property is not at issue.

Peggy was the manager and chief executive officer of Professional Business Services, Inc. (PBS), and Helen was the president. Both Peggy and Helen were shareholders. PBS was involved in lengthy litigation with a former client, Magic Valley Radiology Associates (MVRA). During the initial trial, the trial court found both PBS and Helen liable to MVRA. A letter of credit was posted in lieu of a supersedeas bond to stay enforcement of the judgment. Helen assumed personal liability to reimburse the issuing bank if payment on the letter of credit were ultimately required. On appeal, the Idaho Supreme Court reversed the judgment against Helen and remanded the case. *Davis v. Professional Business Services, Inc.*, 109 Idaho 810, 712 P.2d 511 (1985). The case was retried and was again appealed to the Idaho Supreme Court. The Supreme Court again remanded the case. *Magic Valley Radiology Associates, P.A. v. Professional*

---

1. Twin Falls Bank and Trust has been replaced by First Security Bank. All references to the trustee will incorporate both institutions as appropriate.

2. Prior to Peggy's death, a fifth Kolouch of Peggy's generation sold his interest in the properties back to the family.

*Business Services, Inc.,* 119 Idaho 558, 808 P.2d 1303 (1991). By the time the case returned to the trial court, PBS was defunct and had no assets. Prior to Peggy's death either PBS or Helen had paid all of the attorney fees incurred during this litigation. However, from the time of Peggy's death in 1988, Helen paid for litigation costs with estate funds, although neither Peggy, individually, nor the estate were parties to the litigation. In 1991, MVRA commenced a separate action to pierce the corporate veil and collect the judgment against PBS from Helen individually and from Peggy's estate. That case was also appealed to the Supreme Court, *Magic Valley Radiology, P.A. v. Kolouch,* 123 Idaho 434, 849 P.2d 107 (1993), which affirmed in part, vacated in part and remanded.

In July 1991, the trustee of the testamentary trust established by Peggy petitioned for Helen's removal as personal representative and for an order requiring Helen to reimburse the estate for all losses caused by her misconduct. This action was joined by Peggy's children, Karena Youtz and Ron Youtz. The magistrate issued a memorandum decision and subsequent order removing Helen from the position of personal representative of Peggy's estate and appointing Forrest P. Hymas as the successor personal representative. The magistrate then ordered that several issues presented by the estate's claims against Helen would be individually ruled upon, but treated as part of a continuing proceeding. The magistrate also ordered that Helen pay attorney fees incurred during the proceedings for her removal, that she reimburse the estate for the lots in Kolouch subdivision that were sold to third parties and that she return to the estate Peggy's interest in the Kolouch subdivision and Jefferson House. The trustee, Peggy's children and Forrest Hymas (the respondents), moved for partial summary judgment, requesting reimbursement of the PBS litigation expenses. The magistrate entered summary judgment and ordered that Helen return estate funds spent in PBS's litigation with MVRA and pay prejudgment interest on that amount. The magistrate awarded the trustee extraordinary costs incurred in managing the trust, finding that

they were attributable to Helen's mismanagement of the estate and therefore chargeable to Helen personally. The magistrate also denied Helen's request for a personal representative's fee. Helen appealed to the district court which affirmed the magistrate's rulings. Helen again appeals.

## II.

## ANALYSIS

On review of a decision of the district court, rendered in its appellate capacity, we examine the record of the trial court independently of, but with due regard for, the district court's intermediate appellate decision. *Hentges v. Hentges,* 115 Idaho 192, 194, 765 P.2d 1094, 1096 (Ct.App.1988). Our standard for reviewing a trial court's findings and conclusions is to determine whether the findings of fact are supported by substantial, competent evidence, and to determine whether the trial court properly applied the law to the facts as found. *Tri–Circle, Inc., v. Brugger Corp.,* 121 Idaho 950, 954, 829 P.2d 540, 544 (Ct.App.1992). Over questions of law, we exercise free review. *Kawai Farms, Inc. v. Longstreet,* 121 Idaho 610, 613, 826 P.2d 1322, 1325 (1992); *Cole v. Kunzler,* 115 Idaho 552, 555, 768 P.2d 815, 818 (Ct.App.1989).

### A. Separate Proceedings

Helen cites Idaho Code Section 15–3–107(1) for the proposition that the magistrate should have required a separate proceeding for each issue decided below. Helen further argues that because multiple issues were decided in one proceeding, she lacked the appropriate notice and an opportunity to be heard. *See* 31 Am.Jur.2d, *Executors & Administrators* § 983 (1989).

Idaho Code Section 15–3–107 provides in pertinent part:

Unless supervised administration as described in ... this code is involved, (1) each proceeding before the court or registrar is independent of any other proceeding involving the same estate; (2) petitions for formal orders of the court may combine various requests for relief in a single pro-

ceeding if the orders sought may be finally granted without delay.

This provision does not impose a requirement that every order of the court regarding the same estate must be made through an entirely new proceeding. In hearing the removal motion, the magistrate properly reviewed all of the alleged improper acts of Helen as personal representative and the consequences thereof to the estate. These issues were intertwined with the later rulings made by the magistrate and thus were properly combined into one proceeding. Peggy's will was admitted to probate in 1988. Helen was removed as personal representative in 1992. For nearly four years since her removal, this case has been at various levels of the court system. Requiring decisions to be made without reference to and in entirely separate proceedings from those integrally related, legally and factually, would have caused even more unnecessary delay and expense. The magistrate did not err in conducting one continuous proceeding to dispense with the many, related issues in this case.

■ Helen claims that she did not receive adequate notice regarding issues to be addressed by the magistrate—specifically that she could be held personally liable for her actions taken as personal representative. However, the petition to remove her as personal representative also requested that Helen be ordered to reimburse the estate for losses that she caused. Further notice was provided over the course of the proceedings by the respondents and the court. Helen was deposed three times regarding the matters in this case. She testified twice in court; once at the hearing regarding her removal as personal representative and once at a hearing regarding the balance of the issues before the magistrate. Helen also provided to the magistrate two affidavits regarding other issues before the court. There is no support in the record for her contention that she was given inadequate notice of the issues to be addressed or was denied an opportunity to be heard.

## B. Removal Action

■ Helen claims the magistrate erred in removing her from the position of personal representative. Idaho Code Section 15–3–611(b) states that "[c]ause for removal exists when removal would be in the best interests of the estate, or if it is shown that a personal representative ... has mismanaged the estate or failed to perform any duty of the office."

■ The magistrate found that Helen failed to act in the best interests of the estate, mismanaged the affairs of the estate, operated under a conflict of interest, failed to marshall estate assets and breached her fiduciary duty to the estate. The magistrate found, and the district court concurred, that the financial mismanagement by Helen was not merely a mistake, but was in fact fraudulent and willful. Factual findings by the trial court will not be disturbed if supported by substantial, competent evidence. *Tri–Circle, Inc., v. Brugger Corp.,* 121 Idaho 950, 954, 829 P.2d 540, 544 (Ct.App.1992).

The evidence indicates that on March 29, 1988, the magistrate appointed Helen personal representative of Peggy's estate upon Helen's request. On March 31, 1988, Helen conveyed the Jefferson House property from the estate to herself and three of her surviving children, for $10. Evidence in the record also demonstrates that Helen paid PBS litigation expenses with estate funds, although the estate was not a party to the litigation. Rather, due to a letter of credit which had been issued to stay enforcement of the judgment against PBS, and which Helen guaranteed, Helen, herself, bore contingent liability for any award against PBS. Financial mismanagement, such as Helen's use of estate funds in litigation in which she, but not the estate, had a financial interest, and her conveyance of estate property to herself and her surviving children, supports the magistrate's finding that she was acting against the interests of the estate and that removal was in the best interests of the estate. Based upon a factual finding of financial mismanagement, which is supported by substantial, competent evidence in the record, it was not error for the magistrate to remove Helen as personal representative of Peggy's estate.

## C. Attorney's Fees for Removal Action

■ Helen asserts that the magistrate erred in awarding attorney fees to the respondents in their action to remove her from the position of personal representative. She argues that because her defense of the petition to remove was not frivolous, the fees were wrongfully granted. Further, she claims that the amount of attorney fees granted was inappropriate and urges this Court to review the amount awarded. She also disputes the magistrate's order granting attorney fees without first conducting a hearing on the issue.

■ Idaho Rule of Civil Procedure 54(e)(1) provides that an award under Idaho Code Section 12–121 may not be made unless the court finds, from facts presented to it, that the case was brought, pursued or defended frivolously, unreasonably or without foundation. *In re Estate of Kunzler*, 109 Idaho 350, 354, 707 P.2d 461, 465 (Ct.App. 1985). Applying these criteria to the facts of a particular case is a task invoking the judge's discretionary function. The judge's determination as to whether the criteria for an award of attorney's fees have been satisfied will not be disturbed on appeal unless such discretion has been abused. *Id.* Like the award itself, the reasonableness of the amount is a discretionary determination by the trial court. *DesFosses v. DesFosses*, 122 Idaho 634, 638, 836 P.2d 1095, 1099 (Ct.App. 1992). When reviewing an exercise of discretion, an appellate court must determine whether the lower court properly applied the legal standard. *Estate of Kunzler*, 109 Idaho at 354, 707 P.2d at 465.

The magistrate found that the respondents were the prevailing parties in the removal action and met the criteria for an award of attorney fees under Idaho Code Section 12–121 and Idaho Rule of Civil Procedure 54(d)(1)(B). The magistrate further found, pursuant to Rules 54(d)(1)(B) and 54(e)(1) and (2), that Helen's defense against the petition for removal was unreasonable and frivolous. The magistrate then used the criteria set forth in I.R.C.P. 54(e)(3) to determine the amount of the attorney fee award. Finally, the magistrate found that equity would not be served by requiring Peggy's children to pay for representation to remove Helen as the personal representative when she was, in bad faith, misappropriating funds and property from the estate.

The magistrate used the correct legal standard in determining whether an award of attorney fees was appropriate and in what amount. The magistrate's factual findings of Helen's bad faith misuse of estate funds support the conclusion that her defense of the removal action was unreasonable and frivolous. The magistrate found that the time, skill, and labor required, novelty and difficulty of the issues and the financial impact upon the estate justified an award in the amount of $50,000. It was not an abuse of discretion in this situation for the magistrate to award attorney fees in that amount to the estate for the removal proceedings.

## D. PBS Litigation Expenses

■ Helen next asserts that the magistrate erred in granting the respondents' motion for summary judgment regarding the PBS litigation costs.

■ Idaho Code Section 15–3–720 provides that a personal representative who "defends or prosecutes any proceeding in good faith, whether successful or not ... is entitled to receive from the estate his necessary expenses and disbursements including reasonable attorney's fees incurred." The services rendered, however, must benefit the estate and cannot be incurred to protect personal interests. *In re Estate of Eliasen*, 105 Idaho 234, 241, 668 P.2d 110, 117 (1983). In this case, Helen benefited from the legal defense of PBS while the estate did not. Therefore, she is not entitled to receive from the estate the expenses of that litigation payment pursuant to this provision.

In Helen's affidavit, and again on appeal, she alleges that Peggy agreed to undertake the litigation costs of the PBS litigation if PBS could no longer afford it. She claims that the defense costs were an obligation of Peggy's estate due to this oral contract.

■ The question of whether there was a sufficient meeting of the minds to form an express agreement is to be determined by

the trier of fact. *Bischoff v. Quong–Watkins Properties,* 113 Idaho 826, 828, 748 P.2d 410, 412 (Ct.App.1987). The magistrate found that insufficient admissible evidence had been submitted to find the existence of an express agreement. The magistrate further found that, to the extent it addressed the alleged contract with Peggy, Helen's affidavit violated Idaho Code Section 9–202(3), stating that since Helen "is a party to the action, upon a claim against the estate of Peggy Kolouch, she cannot testify as to any communication or agreement, not in writing, occurring before Peggy's death." Idaho Code Section 9–202(3) provides that the following persons cannot be witnesses: [3]

(3) Parties or assignors of parties to an action or proceeding, or persons in whose behalf an action or proceeding is prosecuted against an executor or administrator, upon a claim or demand against the estate of a deceased person, as to any communication or agreement, not in writing, occurring before the death of such deceased person.

The test used to determine whether I.C. § 9–202(3) bars testimony is set out in *Argyle v. Slemaker,* 99 Idaho 544, 585 P.2d 954 (1978). The Supreme Court in that case stated that I.C. § 9–202(3) prohibits certain persons from testifying in specified actions as to certain communications. *Argyle,* 99 Idaho at 547, 585 P.2d at 957. All three portions of I.C. § 9–202(3) must be satisfied in order for the evidence to be barred. *Id.*

As noted by Helen, the statutory bar to evidence in I.C. § 9–202(3) excludes evidence only in an action against the personal representative of a deceased person, not in an action by the personal representative to bring into the estate money not previously part of the estate. *Servel v. Corbett,* 49 Idaho 536, 290 P. 200 (1930); *See also Webster v. Magleby,* 98 Idaho 326, 563 P.2d 50 (1977) (dead man's statute applies only to claims against the estate of deceased person). This matter came before the magistrate as the estate's attempt to recover estate funds used in the PBS litigation. According to

Helen, in the affidavit in question, she, "directed her Idaho counsel to prepare a claim against the Estate [to pay attorney fees incurred by PBS] for filing by the affiant within the 120–day limitation period. This claim was prepared, executed and filed with the Personal Representative, consistent with the affiant's understanding of the law." If as personal representative of the estate she had properly refused to pay the claim, the matter would have gone before the magistrate on Helen's claim for payment of PBS's attorney fees. Therefore, Helen would have been a party to the action upon a claim or demand against the estate and the statutory bar to evidence of the alleged oral contract would have protected the estate from her claim. It is only because Helen wore two hats in this transaction that she was able to pay her own claim for the PBS litigation expenses out of funds already in the estate and avoid bringing it before the magistrate. Equity regards that as done which ought to have been done. *Heller v. Levine,* 7 Ariz.App. 231, 437 P.2d 983 (1968); *Stauth v. Brown,* 241 Kan. 1, 734 P.2d 1063 (1987); *Carcione v. Clark,* 96 Nev. 808, 618 P.2d 346 (1980). We conclude that personal representatives should not be allowed to avoid application of I.C. § 9–202(3) by seizing assets of the estate for their personal benefit and thereby forcing the heirs to initiate legal action to recover the misappropriated assets. Hence, the magistrate properly found that Helen, for the purposes of the application of I.C. § 9–202(3), was a party prosecuting an action against the estate.

An action against the estate for specific performance of an alleged oral contract made by the deceased is an action within the purview of I.C. § 9–202(3). *Johnson v. Flatness,* 70 Idaho 37, 40–41, 211 P.2d 769, 772–73 (1949). The certain communications prong of I.C. § 9–202(3) is met by contracts and agreements not in writing. *Dowd v. Estate of Dowd,* 62 Idaho 157, 108 P.2d 287 (1940). Absent Helen's affidavit, there is no evidence in the record supporting her allegation of an oral agreement. Thus, the magistrate correctly determined that

---

3. Note that the term "witnesses" has previously been found to encompass affiants to affidavits before a court considering summary judgment.

*See Estate of Keeven,* 110 Idaho 452, 716 P.2d 1224 (1986).

Helen was prohibited from testifying regarding the existence of an express agreement and further, that absent Helen's testimony, there was insufficient evidence to support a finding of such an agreement.

 Helen argues, in the alternative, that there was an implied contract between herself and Peggy. While a contract can be implied in fact by the conduct of the parties, the facts must be such that an intent to make a contract may be fairly inferred. *Lawyers Title Company of Idaho v. Jacobs,* 102 Idaho 804, 806, 641 P.2d 350, 352 (Ct.App.1982). If the trial court's finding that there was no implied contract is not clearly erroneous; it will not be set aside on appeal. *Id.* The magistrate found that there was no change in behavior among and between the parties to the alleged contract that would indicate an implied contract existed. The evidence that until Peggy's death all litigation costs were paid by Helen or PBS supports the magistrate's finding. On appeal we will not set aside the magistrate's finding as it is not clearly erroneous.

In summary, the evidence indicates that the litigation expenses were incurred while Peggy's estate was not a party and they tended to benefit Helen personally. There was insufficient admissible evidence of either an express or an implied contract to pay the expenses, which would have bound the estate. The magistrate did not err in granting the respondents' motion for summary judgment and ordering Helen to reimburse the estate for the litigation expenses incurred in defending PBS.

### E. Interest Award on Funds Reimbursed to the Estate

 Helen sold Peggy's interest in the Kolouch subdivision to her surviving children without sufficient remuneration to the estate. Certain lots in the Kolouch subdivision were sold and the profits initially retained by Peggy's siblings. Helen claims on appeal that the magistrate erred by ordering her to pay interest on the sums which she eventually reimbursed to the estate as a result of these sales. She asserts that because the real property itself was not income or interest producing, she should not have to add inter-

est to her reimbursement to the estate. Helen argues that the principal achieved from the sales would probably have been used for estate purposes and would not have been invested.

Due to Helen's mismanagement of the estate, her surviving children received compensation from the sale of real property which rightfully belonged to the estate. If the exercise of power concerning the estate is improper, the personal representative is liable to interested persons for damages or loss resulting from breach of a fiduciary duty to the same extent as a trustee of an express trust. I.C. § 15–3–712. Idaho Code Section 15–7–302 provides in part that a trustee "shall observe the standards in dealing with the trust assets that would be observed by a prudent man dealing with the property of another." This creates a duty in a personal representative to deal with the finances of the estate prudently, which may include investing cash proceeds in an interest bearing account. Such investment is specifically authorized by Idaho Code Section 15–3–715(5). The proceeds of the sale would properly have been invested to gain interest for the benefit of the estate.

Helen was under a statutory duty to safeguard the property of the estate. Her failure to do so resulted in the liquidation of an asset and payment to another of the cash proceeds, which rightfully belonged to the estate. The enrichment through any interest which could have been accrued from the time of the sale to the time of reimbursement should be to the estate, not to those who stood to profit from Helen's mismanagement of the estate. In light of the fiduciary duties of a personal representative, it was proper under the circumstances of this case for the magistrate to order Helen to pay interest at the statutory rate on the proceeds of the sale of real property.

### F. Extraordinary Costs Incurred by the Trustee

 The magistrate found that Helen's management of the estate led to extraordinary costs for the trustee in marshalling the trust property and, therefore, Helen was lia-

ble to the trustee for those costs. On appeal, Helen claims that there is no statutory authority for imposition on a personal representative any "extra" costs incurred by the trustee of a testamentary trust.

As previously noted, if the exercise of power concerning the estate is improper, the personal representative is liable to interested persons for damages or loss resulting from breach of fiduciary duty to the same extent as a trustee of an express trust. I.C. § 15–3–712. "A trustee is personally liable for obligations arising from ownership or control of property of the trust estate or for torts committed in the course of administration of the trust estate only if he is personally at fault." I.C. § 15–7–306.

Helen's mismanagement of the property of the estate caused the trustee to accrue fees which were beyond those associated with the usual and ordinary duties of a trustee. As a fiduciary, Helen is liable to interested parties, such as the trustee, for obligations which arose due to her personal fault. The magistrate did not err in holding Helen responsible for the extraordinary costs incurred by the trustee.

## G. Homestead and Exempt Property Allowances

Idaho law provides for "certain rights and values to which a surviving spouse and certain children of a deceased domiciliary are entitled in preference over unsecured creditors of the estate and persons to whom the estate may be devised by will." General Comment to I.C. §§ 15–2–401, –404 (1971). The magistrate awarded Karena and Ron Youtz homestead allowances pursuant to I.C. § 15–2–401 in the amount of $5,000 each.[4] The magistrate also awarded Karena and Ron Youtz an exempt property allowance pursuant to I.C. § 15–2–402 in the total amount of $3,500.[5] The magistrate ordered that these allowances are "in addition to any share otherwise passing to the children of the decedent and [are] to be taken from estate as it existed prior to any other claim having been satisfied."

There is some dispute on appeal as to whether the magistrate intended the allowances to be taken from Helen's portion under the will or from the residuary of the estate, which passes to Ron and Karena Youtz. The will devised Peggy's personal property to her children as they may choose, with the remainder of the personal property to Helen; her house and accounts receivable to Helen; gifts of $1,000 to each of five people; and the remainder of her estate to her testamentary trust for the benefit of her children.

The magistrate's order in this case provided that the allowances were in addition to any other gift the children were entitled to under the will. However, a residuary gift, by its very nature, is not of an ascertainable amount until all other distributions have been made, and it is the first gift to suffer abatement in order to satisfy another gift, claim or allowance. See I.C. § 15–3–902. The "in addition to" language in the order must then

4. Idaho Code Section 15–2–401 provides:

 If no homestead has been selected during life and set aside, ... each minor child and each dependent child of the decedent is entitled to a homestead allowance amounting to ten thousand dollars ($10,000) divided by the number of minor and dependent children of the decedent if the same condition exists. The homestead allowance is exempt from and has priority over all claims against the estate. Homestead allowance is in addition to any share passing to the surviving spouse or minor or dependent child by the will of decedent unless otherwise provided....

5. Idaho Code Section 15–2–402 provides:

 In addition to the homestead allowance, the ... children of the decedent are entitled jointly to [value not exceeding three thousand five hundred dollars ($3,500) in excess of any security interests therein in household furniture, automobiles, furnishings, appliances and personal effects.].... if there is not three thousand five hundred dollars ($3,500) worth of exempt property in the estate, the spouse or children are entitled to other assets of the estate, if any, to the extent necessary to make up the three thousand five hundred dollar ($3,500) value. Rights to exempt property and assets needed to make up a deficiency of exempt property have priority over all claims against the estate, except that the right to any assets to make up a deficiency of exempt property shall abate as necessary to permit prior payment of homestead allowance and family allowance. These rights are in addition to any benefit or share passing to the surviving spouse or children by the will of the decedent unless otherwise provided....

be construed to mean that in accepting an exempt property allowance, the children are not foreclosed from receiving a further gift provided under the will. Peggy directed that the "rest, residue and remainder" of her estate should go to her children. This does not occur, however, until the estate satisfies the homestead and exempt property allowances, creditors' claims, and the specific and general devises. Therefore, we uphold the order that the allowances be taken in addition to any other gift the children were to receive, but note that the amount of the residual estate is not determined until all other distributions, including the allowances, are made.

■ The magistrate also ordered the allowances be taken "from the estate as it existed prior to any other claim having been satisfied." To the extent that Helen argues this indicates an intention to charge these allowances to her personally, this view is not clearly supported by the magistrate's order or the applicable statutes.

■ Idaho Code Section 15–2–404 provides, in part: "If the estate is otherwise sufficient, property specifically devised is *not* used to satisfy rights to homestead and exempt property." (Emphasis added). Pursuant to the Uniform Probate Code, specific devises under the will, therefore, may not be used to satisfy the homestead and exempt property allowances, so long as there are sufficient funds in the estate to cover the allowances. When read as a whole, the Uniform Probate Code is clear that when there is sufficient property in an estate, the homestead allowance and the exempt property allowance are to be satisfied first. After these allowances, the creditors' claims are to be paid, followed by the specific devises and then the general devises. The remainder is then to pass to the residuary taker. The magistrate's order in this case providing that the statutory allowances be taken from the estate, as it existed prior to the satisfaction of *any* devises, was not error. However, it cannot be read to charge them against Helen's interest, because her gifts under the will were specific devises and, in light of the

sufficiency of the funds in the estate, not necessary for satisfaction of the allowances. *See* I.C. § 15–2–404. The magistrate's order that the homestead and exempt property allowances be taken by Ron and Karena Youtz, in addition to any other share of the estate, was proper. However, these allowances will, in actuality, reduce the residuary estate which would otherwise pass into the trust for the children's benefit. The further order that these allowances be taken from the estate, as it existed prior to the satisfaction of any other devise, was also proper.

## H. Fee for Service as Personal Representative

■ Helen claims to have spent eight hundred hours working as personal representative of the estate. She requested compensation in the amount of $20,000 for services rendered. The magistrate found that Helen failed to bear her burden of proving her requests for reimbursement. The magistrate further found that Helen listed several activities, such as the care of her grandchildren and the maintenance of her own home,[6] which were not compensable through her position as personal representative. Helen also charged the estate for the cost of winding up PBS and attending to the lawsuit against MVRA which she had an obligation to do as president of the corporation. The magistrate concluded that Helen was not entitled to a fee for serving as personal representative for the estate because she had failed to meet her burden of proof, the estate did not benefit from her representation, and because the estate had to expend substantial costs in litigation against Helen.

■ Idaho Code Section 15–3–719 provides that a "personal representative is entitled to reasonable compensation for [her] services." The personal representative's fee must bear some relation to the value of services rendered. *Chapman v. Ada County,* 48 Idaho 632, 284 P. 259 (1930). We conclude that the magistrate properly determined that Helen failed to delineate what portion of time she spent on duties which were chargeable to the estate and that the value of her services to the estate did not entitle her to a fee.

---

**6.** Helen inherited Peggy's home and then charged the estate for its maintenance.

Under the circumstances in this case, the magistrate did not err in refusing to grant Helen a fee for her services as personal representative.

## I. Attorney Fees for This Appeal

 Helen and the respondents request attorney fees on appeal. An award to the prevailing party is appropriate when this Court is left with the abiding belief that the appeal has been brought or defended frivolously, unreasonably or without foundation. *Excel Leasing Co. v. Christensen,* 115 Idaho 708, 769 P.2d 585 (Ct.App.1989). Helen's appeal in this matter is largely frivolous and unreasonable. But for the dispute regarding the homestead and exempt property allowances, award of the attorney fees to the respondents would have been appropriate. However, Helen's position on that issue was legitimate and continually contested through briefing and oral argument by the respondents. Therefore, although the respondents were successful in defending this appeal, no fees will be granted to either party. Accordingly, respondents are awarded costs, but not attorney fees.

## III.

## CONCLUSION

The magistrate did not err in conducting one continuous proceeding to address the many related issues in this case. Helen was given adequate notice of the issues to be addressed and was not denied an opportunity to be heard. Based upon a factual finding of financial mismanagement, which is supported by substantial evidence in the record, it was not error for the magistrate to remove Helen as personal representative of Peggy's estate. It was not an abuse of discretion for the magistrate to award the estate attorney fees for the removal proceedings. The magistrate did not err in finding that the litigation expenses incurred in defending PBS were not chargeable to the estate. In light of the fiduciary duties upon a personal representative, it was proper for the magistrate to order Helen to pay interest at the statutory rate on the proceeds of the sale of real property. Helen's control of the property of the estate caused the trustee to accrue fees which were beyond those associated with the usual duties of a trustee. As a fiduciary she is liable to interested parties, such as the trustee, for obligations which arise due to her personal fault. The magistrate's order providing that the statutory allowances be taken by the children from the estate in addition to other gifts and as it existed prior to the satisfaction of any devises was not error. The magistrate did not err in refusing to award Helen a fee for her services as personal representative. Respondents, First Security Bank, Ron Youtz, Karena Youtz, and Forrest P. Hymas, are awarded costs, but not attorney fees, for this appeal.

WALTERS, C.J., and LANSING, J., concur.