**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 37908**

| | | |
|---|---|---|
| IN THE MATTER OF THE ESTATE OF MARCELLA MERTENS AND GORDON MERTENS, DECEASED. | ) ) ) | |
| ROBERT LEON MERTENS, | ) | 2012 Unpublished Opinion No. 321 |
| Petitioner-Appellant, | ) ) | Filed: January 17, 2012 |
| v. | ) ) | Stephen W. Kenyon, Clerk |
| ESTATE OF MARCELLA MERTENS and GORDON MERTENS, | ) ) ) | THIS IS AN UNPUBLISHED OPINION AND SHALL NOT BE CITED AS AUTHORITY |
| Respondent. | ) ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Bonner County. Hon. Charles W. Hosack, District Judge; Hon. Barbara A. Buchanan, Magistrate.

Order of final distribution, <u>vacated</u> and <u>case remanded</u>.

Robert Leon Mertens, Pekin, Illinois, pro se appellant.

James T. Diehl, Sandpoint, for respondent.

_____

LANSING, Judge

Robert Leon Mertens appeals from an order of final distribution from the estate of his mother. He raises six issues on appeal, asserting that he is entitled to a larger or additional distribution.

**I.**

**BACKGROUND**

**A. Probate and Criminal Proceedings**

Robert Mertens' mother, Marcella Mertens, died on March 21, 2004. Her will appointed Robert to act as personal representative of her estate and further provided:

> . . . I own my home and real property on Syringa Heights, Sandpoint, Idaho, and my investment and stock portfolio jointly with my son, ROBERT L.

1

MERTENS. I hereby give, devise and bequeath all of my interest therein to my son, ROBERT L. MERTENS.

The will further directed that after payment of the debts and expenses of the estate, the residue was to be divided among five other individuals including Robert's sisters, Darlene Spaulding and Charmaine Shields. Probate proceedings were initiated in the magistrate court for Bonner County.

At the time of Marcella's death, Robert was in federal detention awaiting trial on drug, money laundering, and firearms charges that were pending in the United States District Court for the District of Idaho. On April 1, 2004, Robert renounced his right to serve as personal representative of his mother's estate, stating that his detention "will make it impossible . . . to be free to perform the duties of Personal Representative," and nominated his attorney, Daniel Featherston, to serve until Robert's release.[1] Featherston accepted the appointment, and the court issued letters commencing administration of Marcella's estate ("the estate") on April 2, 2004.

Robert was subsequently convicted and sentenced to 444 months' incarceration in his federal criminal case. On December 13, 2004, the federal court entered a Preliminary Order of Forfeiture which ordered that "all of the defendant Robert L. Mertens' right, title and interest" in described property was forfeited to the United States. The property listed in the order included the Syringa Heights residence; one investment account; various bank accounts; and personal property items that had previously been seized from the Syringa Heights residence pursuant to search warrant. The forfeiture order also awarded money judgments against Robert totaling $3,692,563.40. The order further provided:

> The United States shall be entitled to seize and forfeit any substitute assets of the defendant Robert Mertens, which may be subsequently identified and located, in an amount or value equivalent to any of the above-described properties and interests, including the total money judgment amount of $3,692,563.40, . . . to the extent such property or interest . . . cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third person; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be subdivided without difficulty.

---

[1] Featherston had previously represented Robert in various matters, including Robert's criminal case.

Robert and his sister, Darlene Spaulding, separately moved for removal of Featherston as personal representative, and each asked to be appointed as the successor personal representative. On May 24, 2005, the magistrate ordered that the administration of the estate be supervised after hearing arguments regarding Robert's incarceration, the federal forfeiture order, Robert's claims that other heirs were looting the estate and preventing him from removing his own personal property, and Featherston's indications that he was willing to continue as personal representative only if he were represented by counsel. In consideration of the "unique and compelling facts of this case," the court determined that a disinterested professional, independently represented by counsel, could best serve as personal representative. The court appointed an accountant, Patricia Scutier, to serve as the personal representative, and appointed J. T. Diehl as counsel to represent her.

## B. Settlement

In September 2008, the federal government and the estate acknowledged that the joint pendency of the government's criminal proceedings against Robert and the estate's probate proceedings had impeded the timely resolution of both cases. As a result, the estate, the government, and three of Marcella's heirs (not including Robert), entered into an agreement to settle their respective claims to property of the estate. The agreement included settlement of the heirs' potential claim that Marcella's will was invalid due to alleged undue influence exerted by Robert at a time when Marcella was in failing mental health.[2]

By the agreement, the estate and the heirs released any claim to property that had already been seized by the government, and the government agreed to release all claims to property still in the possession of the estate--property which otherwise may have been subject to forfeiture. However, the government "reserve[d] the right to pursue recovery and/or forfeiture of any items or interest which is to be distributed to Robert L. Mertens." It was agreed that the government would receive 50 percent of the net proceeds from the sale of the house, and the estate would receive the remaining 50 percent, to be distributed to heirs other than Robert. The settling parties acknowledged and agreed that "the 50% net to the estate does not contain any interest of Robert L. Mertens, such interest being included in the Government's 50% net portion and having

---

[2] This challenge to the validity of the will was never litigated as against Robert.

been legally cut off and forfeited pursuant to the Preliminary Order of Forfeiture dated December 13, 2004."

## C.    Distribution

On October 6, 2008, the magistrate court granted a motion to disburse the proceeds from the sale of the Syringa Heights residence pursuant to the terms of the settlement agreement. The estate also sought approval for a final distribution of $3,500 to Robert which, according to Diehl's affidavit, represented all proceeds from stock that had been held in Robert's name alone and some proceeds from stock held jointly by Marcella, Gordon Mertens (Robert's deceased father), and/or Robert. In support of the motion for distribution to Robert, the estate submitted affidavits from Scutier and Diehl asserting that the fund balance in the estate bank account was $3,627.99 prior to deposit of proceeds from the sale of the Syringa Heights residence. The affidavits indicated that any distribution made to Robert would be subject to forfeiture. However, Diehl's affidavit said that in the criminal forfeiture proceedings against Robert, the federal government had "identified that the 'threshold' level of value before efforts will be undertaken to attach assets is approximately $5,000."

Robert objected to the distribution, asserting that it "was contrary to Marcella's wishes" and requested additional time to "conduct a [sic] research into the legality of the Preliminary Order of Forfeiture filed in this Court on March 24, 2005, along with the stipulation between the U.S. District Court for the District of Idaho and the estate filed on October 8, 2008 without consent." On November 21, 2008, the magistrate court ordered the distribution of $3,500 to Robert as his full and final distribution.

## D.    Appeal

Robert initially attempted to appeal the order for final distribution to Robert directly to the Idaho Supreme Court, which conditionally dismissed the appeal by order of February 11, 2009, noting that the notice of appeal may not be from a final, appealable district court order. The Supreme Court's order of conditional dismissal allowed Robert to file a response. After receiving his response, the Supreme Court ordered that the matter be remanded to the district court and that the district court "shall process this matter as a timely filed appeal from the Magistrate Court." The appeal then proceeded to the district court, which affirmed without opinion. Robert now further appeals to this Court, asserting numerous claims of error.

4

## II.

## STANDARD OF REVIEW

When reviewing a decision of the district court acting in its appellate capacity, we examine the record from the magistrate court to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. *Harris v. Carter*, 146 Idaho 22, 23-24, 189 P.3d 484, 485-86 (Ct. App. 2008). If those findings are so supported and the conclusions follow from them, and if the district court affirmed the magistrate's decision, we will affirm the district court's decision. *Losser v. Bradstreet*, 145 Idaho 670, 672, 183 P.3d 758, 760 (2008).

## III.

## ANALYSIS

### A.    Management, Liquidation and Distribution of Stock Portfolio

Robert's first claim of error involves the management, liquidation, and distribution of various stocks. Among the assets seized by the federal government, as part of Robert's criminal case, was a portfolio of stocks variously held in the names of Gordon Mertens, Marcella, Robert personally, Robert as executor of Gordon's estate, or some combination of Gordon, Marcella, and Robert. In late 2003, the federal government apparently released the stock certificates to allow Robert to liquidate the stock and hire counsel for his criminal appeal, and the certificates were given to Featherston. Robert filed a request with the probate court to release the stocks to him in order to allow him to hire counsel for his criminal appeal. The estate provided an inventory of the stocks, which indicated that many still listed Gordon Mertens as the owner, and moved the court to: (1) re-open the estate of Gordon Mertens, (2) appoint Scutier as personal representative, (3) consolidate the estate of Gordon Mertens with the estate of Marcella Mertens, (4) authorize the liquidation of the portfolio, and (5) authorize deposit of the proceeds into an estate account. On November 21, 2005, at a hearing regarding the stock portfolio, Robert consented to the liquidation of the stocks, including the stocks held in his name, but objected to consolidation of the proceeds into a single account. The court granted the estate's motion, but ordered the estate to "separately account for the proceeds based upon how the stock is currently titled."

On March 7, 2007, the court held a hearing on the estate's motion to use the proceeds from the sale of the stock portfolio to pay estate expenses. Specifically, the estate wished to use

5

$24,775 from the $37,174.30 available from the liquidation of the stocks in order to pay expenses including funeral expenses, compensation for Scutier, Diehl, and Featherston, and an appraisal for the Syringa Heights residence. At the hearing, Diehl stated:

> There is currently $37,000 available in cash proceeds from Edward Jones [the firm used to liquidate the stock proceeds]. There was a prior order authorizing those funds, those stocks, to be liquidated. Now, we're asking that those funds be made available to satisfy these estate expenses. You know, in anticipation of Mr. Mertens objecting to using those funds, if the court looks at the affidavit, those stocks were in the name of Robert and Marcella Mertens. Robert's interest was acquired as a result of Gordon Mertens' estate, him [sic] conveying his half interest to Robert, but they're co-owned, they're joint tenancy. As far as I'm concerned, they're estate assets. They've been liquidated. If in fact there's a personal property claim, I think we can settle that out when the house sells, or some other way in order to satisfy that. The other proceeds of stock sales were in the name of Gordon Mertens, and or executor, Robert Mertens, so they are truly Gordon Mertens' estate assets and should be available for satisfying these claims.

Robert objected to the use of the funds for any expenses other than the payment of funeral expenses, on the ground that he co-owned the stocks. Diehl responded by explaining that there was a federal order releasing the funds to Robert, but that the funds were not held in his name. He added that the funds were currently being held "under the ID number of the estate of Marcella Mertens, we have control of those, I think they are available to us to satisfy estate expenses." The magistrate approved the estate's motion for the use of the stock proceeds for the payment of the estate expenses. The magistrate subsequently approved the use of the stock proceeds to pay any estate income tax and to pay for preparation of the tax returns.

On November 14, 2008, the estate sought approval of a distribution of $3,500 to Robert. According to affidavits from Scutier and Diehl, the distribution included $824, representing the full amount of proceeds from stock held solely in Robert's name, plus an additional $2,676 from the proceeds of the remaining stock. However, no itemization of the sources of the proceeds nor of expenses accompanied the affidavits.

Robert repeatedly points out that the federal government relinquished the shares of stock to him for his use to hire counsel. He appears to argue that: (1) because the stocks had not been forfeited to the federal government, the proceeds could not be withheld from him; (2) no proceeds from stocks should have been used to pay estate expenses; and/or (3) the payment of *all*

6

estate expenses from the sale of stock proceeds--while the residue of the estate was left "untouched"--was erroneous.

### 1.    Request for full distribution of stock proceeds

Robert appears to argue that Marcella's will bequeathed her interest in the stock portfolio to him, and therefore the funds generated from the liquidation of the stocks should not have been used to pay estate expenses.  However, Robert has not provided either factual or legal support for his argument.  Robert fails to provide any legal authority as to why the use of assets from the estates of Gordon Mertens and Marcella Mertens, which had been consolidated by the court's order dated November 21, 2005, could not be used to pay respective estate expenses, especially after the personal representative received specific court approval for the expenditure of estate assets.[3]  *See* I.C. §§ 15-3-715, 15-3-805 to 807.  Instead, he fills his argument with conclusory assertions and expectations that any lack of explanation in the record for certain action should be construed as error.  ("Little can be gleaned from the record as to why these funds--which were clearly inherited by him--were used as part of a deal between the government and the remaining heirs. . . . [H]undreds of thousands of dollars in assets were disposed of in a manner the [sic] completely contravened the will and the reasons for doing so were not made apparent to anyone involved.")  Where an appellant fails to assert his assignments of error with particularity and to support his position with sufficient authority, those assignments of error are too indefinite to be heard by the Court. *Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010); *Randall v. Ganz*, 96 Idaho 785, 788, 537 P.2d 65, 68 (1975).  A general attack on the findings and conclusions of the district court, without specific reference to evidentiary or legal errors, is insufficient to preserve an issue. *Bach*, 148 Idaho at 790, 229 P.3d at 1152; *Michael v. Zehm*, 74 Idaho 442, 445, 263 P.2d 990, 991 (1953).  Accordingly, this Court will not address issues for which the appellant has not provided cognizable legal argument.

Additionally, Robert "asks that he be provided with all the funds generated from the liquidation of the stock portfolio."  However, Robert does not identify any point in the record where he made this claim of entitlement to *all* stock proceeds.  Indeed, the record indicates that he requested the release to him of a one-half interest and that he consented to payment of at least his mother's funeral expenses from the proceeds.  He does not identify any motion or order

---

[3]    At the hearing, Robert consented to the use of the proceeds to pay for funeral expenses. Robert has not challenged the consolidation of the estates on appeal.

where he requested or was denied the relief he now seeks on appeal. As a general rule, this Court will not search the record for error. *In re Gibbar*, 143 Idaho 937, 946, 155 P.3d 1176, 1185 (Ct. App. 2006). Error is never presumed on appeal and the burden of showing it is on the party alleging it. *Stewart v. Sun Valley Co.*, 140 Idaho 381, 384, 94 P.3d 686, 689 (2004). Because Robert has failed to provide either factual or legal support for his argument, we will not consider it.

### 2. Payment of estate expenses

In Robert's reply brief, he clarifies that the payment of estate expenses from proceeds of the stocks was error because the payment of estate fees came entirely from the liquidation of assets devised to him. Robert argues that at least some of the expenses should have been paid from assets devised to other beneficiaries of the will.

Neither party's briefs to this Court include any argument on the interpretation of Marcella's will regarding payment of expenses, and neither party refers us to any rules or legal authority regarding the priority of assets used to satisfy estate expenses, such as Idaho Code § 15-3-902. The magistrate court did not make a determination as to whether Marcella's will requires or allows that all estate expenses could be paid out of Robert's inheritance alone. Robert repeatedly objected to the use of the stock proceeds for the payment of estate expenses, and Diehl suggested that the estate could settle these claims at a future time when assets became available to the estate.

As of March 7, 2007, the date of the hearing and order allowing the use of stock proceeds to pay estate expenses, the proceeds from the sale of the stock were apparently the only assets available to the estate.[4] Thus, to the extent that the proceeds of the stock were assets of the estate, Robert has not demonstrated any error in the court's approval of the use of the funds to pay estate expenses. However, as the estate continued to gain control of assets through the settlement with the federal government, the personal representative could have provided for the

---

[4]    An early inventory of the estate filed by Featherston indicated that the "Federal Court issued one or more orders restraining and/or prohibiting transfer, sale or otherwise disposing of assets, in which Robert Mertens claims and/or owns an interest." Robert claimed, and the estate recognized, that Robert had a one-half interest in the personal property in the Marcella Mertens residence. Additionally, the federal government had forfeited and asserted ownership of the Syringa Heights residence.

8

expenses to be paid from other assets available to the estate. Although the settlement agreement with the federal government apparently enabled the estate to sell the residence and also made available to the estate personal property that was residue devised to persons other than Robert, the record does not suggest that the estate reallocated any of the expenses that had been paid from Robert's share or otherwise settled Robert's objections regarding the payment of estate expenses as Diehl previously suggested it would. So far as we can discern from the record, the magistrate court never addressed Robert's objection that assets devised to him should not be utilized as the sole source for payment of estate fees and expenses. We conclude that it was error for the magistrate to order a final distribution to Robert without resolving whether his distribution had been excessively charged with estate expenses, or whether Robert's specific devise should have been charged at all.

### 3. Robert's half ownership of a portion of the stock

Additionally, it appears that Robert's distribution did not include his full interest in shares of stock. Based on affidavits provided by Diehl and Scutier indicating that the estate paid Robert $824 for stock held in his name, we find substantial and competent evidence that Robert received the proceeds from the stocks held solely in his name. However, it does not appear that Robert received his interest in proceeds from stock that he co-owned with Marcella either in joint tenancy or as tenants in common. Marcella's will indicated that Robert held a one-half interest in the portfolio. We also note that Diehl described the ownership of the portfolio by saying, "Robert's interest was acquired as a result of Gordon Mertens' Estate, him [sic] conveying his *half interest* to Robert, but they're *co-owned*, they're *joint tenancy*." (Emphasis added.) Although the magistrate ordered a separate accounting for all the proceeds based on the various ownership interests, it does not appear that the accounting was entered into the record. Moreover, Diehl appears to have erroneously equated control with ownership when he argued that proceeds from the sale of stock in which Robert claimed interest could be used to pay expenses of Marcella's estate because funds "were not held" in Robert's name but were held "under the ID number of the Estate of Marcella Mertens, we have control of those, I think they are available to us to satisfy estate expenses."

In light of these facts and on this record, we cannot find substantial and competent evidence showing that the $2,676 distributed to Robert included the full amount of his ownership interest in the stock proceeds.

#### 4. Issues for remand

We therefore find it necessary to remand this matter to the magistrate court to determine: (1) Robert's interest as co-owner, if any, in stock that was liquidated, other than that stock for which the full proceeds have been distributed to Robert; (2) whether any estate debts or expenses that were paid from the proceeds of assets devised to Robert should be allocated among other devisees with corresponding reimbursement to Robert or to the federal government as Robert's successor.

We intend to convey no opinion as to whether any additional proceeds that may be allocable to Robert should be distributed to him or would be subject to seizure by the federal government pursuant to its forfeiture order. The record shows that the federal government at one point relinquished its claim to the stock, and the forfeiture order does not appear to expressly include this stock. However, the money judgments in the forfeiture order and/or the settlement agreement may create rights of the federal government in any prospective distribution owed to Robert. That is a further question to be addressed on remand.

### B. $3,500 Distribution

Robert appears to argue that his distribution from the estate was insufficient when Marcella's will devised and bequeathed the Syringa Heights residence and stock portfolios to him, the sale of these assets generated more than $400,000, three other individuals received $40,000 from the proceeds, and he received only $3,500. He asserts that the personal representative explained "this meager sum" as being the result of "the considerable expense of litigating claims initiated by [Robert] Mertens during these proceedings," but argues the real reason was personal animosity against Robert.

Having already addressed Robert's interest in the stock proceeds, here we address the argument only as it pertains to the Syringa Heights residence. Robert claims that his $3,500 distribution was insufficient, even when considering the forfeiture order, because the federal government generally does not initiate attachment proceedings for assets less than $5,000. Thus, he argues that he is either entitled to an additional $4,999, or to an additional $1,499, which would raise his total distribution to $4,999.

This argument is meritless. The monetary amount the federal government will allow to be distributed to Robert before the government will initiate attachment proceedings is irrelevant to Robert's claim to proceeds from the sale of the house. The government obtained forfeiture of

Robert's entire interest in the residence, and the order further provided that the government was entitled to claim Robert's assets to satisfy money judgments of nearly 3.7 million dollars. Having received all of Robert's interest in the real property by forfeiture, the government was entitled to negotiate a settlement with the heirs to resolve their competing claims. Because Robert lost his entire interest in the house by forfeiture, he has no claim to any proceeds from its sale. Therefore, he has shown no error in the magistrate court's approval of a distribution to him that excludes proceeds from the house. The heirs apparently received a share of the proceeds from the sale of the house pursuant to the settlement agreement to settle a claim of undue influence. Robert has not shown that the distribution was erroneous.[5]

## C.     Mismanagement Claim

Robert appears to claim that the court prevented him from removing his personal property from the Syringa Heights residence, and that the personal representatives failed to take steps to prevent theft and damage to his personal property and estate property. He asserts that he lost personal property valued at $73,000, and that $10,000 of damage was done to estate property. He asks that both he and the estate be compensated or reimbursed accordingly.

Robert's arguments are vague and conclusory. We are not able to ascertain from reading his brief what claim of error, if any, he asks this Court to review. Robert presents a factual narrative that either misstates the record, assumes facts without citing evidentiary support in the record, or is supported only by Robert's own conclusory motions to the magistrate court without evidentiary support. Robert has not cited any order by the magistrate that prevented him from removing his personal property or any other adverse order, and has not made any specific claim of error by the magistrate court. Because there was apparently no adverse ruling on this issue, we decline to consider it. *Pines Grazing Ass'n, Inc. v. Flying Joseph Ranch, LLC*, Docket No. 37236 (Nov. 23, 2011); *Garner v. Bartschi*, 139 Idaho 430, 436, 80 P.3d 1031, 1037 (2003).

## D.     Forfeiture Under No Contest Clause

Robert claims that his sisters, who were beneficiaries of Marcella Mertens' will, forfeited their inheritance by contesting the validity of the will and by claiming property bequeathed to

---

[5]     Robert argues that he has an interest in how the proceeds from the sale of the house are applied to the outstanding judgment in the forfeiture order. This is an issue between Robert and the federal government, and therefore is not part of the probate proceeding.

Robert. This claim was not raised before the district court. It is well established that an appellate court of this state will not consider issues that were not presented to the trial court. *State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992); *State v. Jones*, 141 Idaho 673, 676, 115 P.3d 764, 767 (Ct. App. 2005). Where an intermediate appeal has occurred, only issues raised in that intermediate appeal may be brought forward to a higher appellate court. *See Stonecipher v. Stonecipher*, 131 Idaho 731, 737, 963 P.2d 1168, 1174 (1998); *State v. Bailey*, 117 Idaho 941, 943, 792 P.2d 966, 968 (Ct. App. 1990). Therefore, we do not address Robert's arguments regarding the will's "no contest" clause.

**E.      Appointment and Compensation of Scutier and Diehl**

Robert requests that the compensation paid to Scutier, and her attorney, Diehl, be returned to the estate because their appointment was in direct contravention of Marcella's will. It is unclear whether Robert is attempting to argue that Scutier and Diehl were overcompensated or that any compensation was erroneous because a supervised administration was contrary to the direction provided in Marcella's will; however, neither argument has any merit.

In *Kolouch v. First Sec. Bank of Idaho*, 128 Idaho 186, 197, 911 P.2d 779, 790 (Ct. App. 1996), we stated:

> Idaho Code Section 15-3-719 provides that a "personal representative is entitled to reasonable compensation for [her] services." The personal representative's fee must bear some relation to the value of services rendered.

*See also Chapman v. Ada County*, 48 Idaho 632, 284 P. 259 (1930). Robert presents no record upon which we would be able to determine the reasonableness of the compensation. Furthermore, it is not clear how the court's order for supervised administration has any bearing on the issue of compensation. Due to Robert's incarceration, an alternate personal representative was required. As personal representative, Scutier was entitled to reasonable compensation whether the administration of the estate was formal or informal, supervised or unsupervised. Additionally, Robert has not pointed to any order for compensation for this Court to review, and has failed to provide any legal authority to support his argument. Robert's arguments regarding compensation for the personal representative and her counsel are contrary to Idaho statutes, unsupported by legal authority or citations to the record, and we therefore will not further address them. *Garner*, 139 Idaho at 436, 80 P.3d at 1037.

**F.    Attorney Fees**

The estate requests an award for attorney fees and costs on appeal pursuant to I.A.R. 41 and I.C. § 12-121.  Attorney fees may be granted to the prevailing party under I.C. § 12-121 and I.A.R. 41, and such an award is appropriate when the court is left with the abiding belief that the appeal has been brought or defended frivolously, unreasonably, or without foundation.  *Rendon v. Paskett*, 126 Idaho 944, 945, 894 P.2d 775, 776 (Ct. App. 1995).  The estate argues that attorney fees are appropriate in this case on the basis that the "appeal has been brought frivolously, unreasonably and without foundation."  Although Robert did not prevail on several issues that he raised, he did receive some relief on appeal.  Therefore, we cannot hold that the appeal was entirely frivolous or unfounded.  Accordingly, no attorney fees are awarded.

## IV.

## CONCLUSION

For the reasons stated above, we reverse the district court's order affirming the magistrate court and vacate the magistrate court's order of final distribution to Robert.  We remand for further proceedings consistent with this opinion.  No costs or attorney fees on appeal.

Judge GUTIERREZ and Judge MELANSON **CONCUR.**